UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER STEVENS, | No. 2: 19-cv-00670 MCE KJN P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| J. JANAM, et al., | |
| Defendants. | |

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendants' motion for summary judgment. (ECF No. 52.)  For the reasons stated herein, the undersigned recommends that defendants' summary judgment motion be denied.

Legal Standards for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file,

1

together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)). "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587; Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on May 16, 2019 (ECF No. 7), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

Plaintiff's Claims

This action proceeds on plaintiff's original, verified complaint filed April 19, 2019, against defendants Janam and Lira. (ECF No. 1.)

*Claim One*

Plaintiff alleges that on August 17, 2018, at 19:59 hours in Building 9, plaintiff approached defendant Janam and asked him why he searched plaintiff's cell. (Id. at 3.) Plaintiff also asked defendant Janam why he removed a hot pot from plaintiff's cell. (Id.) Defendant Janam told plaintiff that he thought the hot pot did not belong to plaintiff. (Id.) Plaintiff retrieved from his cell a receipt and chrono for the hot pot, which he showed to defendant Janam. (Id.) At this point, defendant Janam told plaintiff that he would return the hot pot to plaintiff when he felt like it. (Id.)

When plaintiff turned his back from defendant Janam and began to walk away, defendant Janam took plaintiff to the ground. (Id. at 4.) Defendant Janam had plaintiff "prone out" on the floor and handcuffs were placed on plaintiff. (Id.)

Plaintiff alleges that during the August 17, 2018 incident, he followed all commands given to him by defendant Janam. (Id.)

Plaintiff alleges that during the August 17, 2018 incident, defendant Janam used excessive force in violation of the Eighth Amendment by taking plaintiff to the ground. Plaintiff alleges that plaintiff suffered bruised knees. (Id. at 3.) Plaintiff also alleges that defendant Janam tried to break plaintiff's wrist, by bending plaintiff's hands upward. (Id.)

*Claim Two*

Plaintiff alleges that on August 17, 2018, at 19:59 hours, defendant Lira came running into Building 9 responding to the alarm code. (Id. at 5.) At this time, plaintiff was proned out on the floor wearing handcuffs. (Id.) An officer had a knee in plaintiff's back. (Id.) Plaintiff was not moving. (Id.) Plaintiff followed all commands given to him. (Id.)

Defendant Lira requested leg restraints from the tower officer. (Id.) Defendant Lira applied the leg restraints on plaintiff's right ankle so tightly that plaintiff's flesh was caught in the restraint, causing excruciating pain. (Id.) Plaintiff screamed out because of the pain. (Id.)

Plaintiff alleges that several officers, including defendant Lira, escorted plaintiff to a holding cage. (Id. at 6.) Plaintiff alleges that he could not walk properly to the cage because of the pain in his right ankle. (Id.) After being put in the cage, plaintiff asked defendant Lira to

4

1   remove the leg restraints because they were so tight. (Id.) Defendant Lira apparently failed to
2   remove the leg restraints. (Id.

3   Plaintiff alleges that after being in the cage for a while, his whole right ankle became
4   numb. (Id. at 7.) Plaintiff alleges that when he was finally released from the cage, he was so
5   weak and in pain that he could not walk. (Id. at 8.) Plaintiff was placed in a wheelchair and
6   pushed back to his cell. (Id.)

7   Plaintiff alleges that at some point after he complained to defendant Lira about the pain
8   from the leg restraints, defendant Lira responded that she was teaching plaintiff a lesson. (Id. at
9   9.)

10   Plaintiff alleges that on August 21, 2018, he was seen by Nurse Anderson for three
11   identical abrasions/cuts to his right ankle, caused by the leg restraints applied by defendant Lira.
12   (Id. at 5.)

13   Plaintiff alleges that defendant Lira applied the leg restraints with the intent to cause
14   plaintiff pain, in violation of the Eighth Amendment. (Id.)

15   Legal Standard for Eighth Amendment Excessive Force Claim

16   "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places
17   restraints on prison officials, who may not … use excessive physical force against prisoners."
18   Farmer v. Brennan, 511 U.S. 825, 832 (1994). "[W]henever prison officials stand accused of
19   using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is
20   ... whether force was applied in a good-faith effort to maintain or restore discipline, or
21   maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).

22   When determining whether the force was excessive, the court looks to the "extent of
23   injury suffered by an inmate ..., the need for application of force, the relationship between that
24   need and the amount of force used, the threat 'reasonably perceived by the responsible officials,'
25   and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7
26   (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)). While de minimis uses of physical force
27   generally do not implicate the Eighth Amendment, significant injury need not be evident in the
28   context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically

5

use force to cause harm, contemporary standards of decency always are violated." Hudson, 503 U.S. at 9.

Discussion

*Plaintiff's Opposition*

On March 5, 2021, plaintiff filed a three-pages long opposition to defendants' summary judgment motion. (ECF No. 54.) In the opposition, plaintiff briefly summarizes his claims against defendant and requests money damages.

In the reply, defendants argue that the court should grant their summary judgment motion because plaintiff's opposition fails to comply with Federal Rule of Civil Procedure 56 and Local Rule 260. (ECF No. 55.) Defendants argue that plaintiff's opposition fails to cite any evidence or respond to defendants' statement of undisputed facts, as required by Rule 56 and Local Rule 260. (Id.)

The undersigned is mindful of the Ninth Circuit's instruction that district courts are to "construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). It is clear from plaintiff's opposition that he opposes defendants' summary judgment motion in its entirety. Although plaintiff's opposition may be deficient, the undersigned considers plaintiff's verified complaint as an affidavit in opposition to defendants' summary judgment motion to the extent it sets forth facts based on plaintiff's personal knowledge that are admissible into evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995).

*Defendant Janam*

Defendants argue that defendant Janam did not use excessive force against plaintiff on August 17, 2018. (ECF No. 52-2 at 4.) Defendants argue that it was necessary for defendant Janam to take plaintiff to the ground to maintain order because plaintiff confronted defendant Janam and argued with him while defendant Janam was completing the evening count. (Id. at 5.) Defendants also argue that plaintiff suffered no documented injuries as a result of the incident involving defendant Janam. (Id. at 4.) Defendants also argue that defendant Janam's use of force was de minimis. (Id. at 6.)

6

In support of the arguments set forth above, defendants refer to defendant Janam's declaration. The undersigned sets forth the relevant portions of defendant Janam's declaration herein:

> 2. I am employed by the California Department of Corrections and Rehabilitation (CDCR) as a Correctional Officer at Mule Creek State Prison (Mule Creek). In or about August 2018, I was regularly assigned to Facility B as a Correctional Officer in Building Nine, the building to which Stevens was assigned at that time.
>
> 3. In or about August 2018, my typical duties as a Correctional Officer at Mule Creek included, but were not limited to, maintaining the safety and security of the housing unit by handling regular security checks, conducting regular cells searches, providing inmates with necessary forms, and releasing inmates for yard time, meals, showers and other appointments.
>
> 4. I recall multiple interactions with inmate Stevens in Building Nine on August 17, 2018. On that day, I discovered inmate manufactured alcohol during a routine search of his cell. Because Stevens appeared to be under the influence of alcohol, I had him escorted to medical to detox to maintain the safety and security of the housing unit. I also wrote a CDCR 115 Rules Violation Report for possession of inmate manufactured alcohol. During the cell search I also confiscated a hot pot from Stevens' cell because it was not reflected on his inmate property card. A true and correct copy of Rules Violation Report, log number 5505982, is attached as Exhibit A.
>
> 5. A few hours later, Stevens returned from medical while my partner and I were starting the evening count. Stevens was visibly upset when he entered the housing unit. Stevens demanded that I immediately return the hot pot and offered to provide a valid receipt for it. I told Stevens that I would return the hot pot to him once my partner and I finished the evening count. At that point, Stevens escalated the situation and began yelling and trying to incite other inmates in the housing unit. Because Stevens became disruptive, we stopped the evening count and my partner and I ordered Stevens to submit to handcuffs. Stevens resisted the application of handcuffs by trying to twist away and, as a result, my partner and I took him to the ground to compel his compliance with our order and to prevent any injury to us or Stevens. I pushed my personal alarm for back up. Once Stevens was on the ground, my partner and I applied handcuffs. Other than taking Stevens to the ground, I did not use any force during that incident and I did not apply his leg restraints. Defendant Lira, a responding officer, entered the housing unit in response to the alarm and applied leg restraints. Following the incident, Stevens was issued a Rules Violation Report for Resisting a Peace Officer in Performance of Duties; Resulting in Use of Force. A true and correct copy of Rules Violation Report, log number 5506968, is attached as Exhibit B.
>
> 6. Once Stevens was secured in restraints, responding officers that were not involved with the take down escorted him to medical for an

7

> evaluation. I had no further interactions with Stevens and I did not escort him to medical.

(ECF No. 52-4 at 1-3.)

Plaintiff's version of events, as alleged in the verified complaint, is materially different from defendant Janam's version of events. Plaintiff alleges that after defendant Janam told plaintiff that he would return the hot pot when he felt like it, plaintiff turned his back and started walking away. Plaintiff alleges that defendant Janam took plaintiff to the ground as he walked away. Plaintiff alleges that he obeyed all commands given to him by defendant Janam. Therefore, according to plaintiff's version of events, defendant Janam did not use force in a good faith effort to maintain or restore discipline.

After reviewing defendant Janam's declaration and plaintiff's verified complaint, the undersigned finds that whether plaintiff became disruptive, started yelling and tried to incite other inmates when defendant Janam would not immediately return the hot pot is a materially disputed fact. Whether defendant Janam tried to apply handcuffs before taking plaintiff to the ground and whether plaintiff resisted the application of the handcuffs is a materially disputed fact. Based on these disputed facts, the undersigned cannot determine whether defendant Janam used force in a good faith effort to restore discipline.

Addressing the first Hudson fact, i.e., extent of injury, defendants argue that plaintiff suffered no documented injuries as a result of the takedown in the housing unit. Defendants argue that during the post-incident use of force video interview, plaintiff reported only injuries to his ankles resulting from the leg restraints.[1] Defendants argue that although plaintiff now alleges further injuries from that incident, those allegations are contradicted by his own words in the post-incident use of force video, and no reasonable jury could believe "it."

The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident.[2] Hudson, 503

---

[1] The undersigned has viewed the use of force video submitted by defendants.

[2] "In the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always

8

U.S. a 9. The nature and extent of plaintiff's injuries should be left for a jury to decide.

Defendants argue that defendant Janam should be granted summary judgment because it is undisputed that his takedown of plaintiff involved a de minimis amount of force solely to maintain order and discipline. As discussed above, whether defendant Janam used force in a good faith effort to maintain or restore discipline is a disputed material fact. For these reasons, defendant Janam is not entitled to summary judgment on these grounds.

Based on the discussion above, the undersigned recommends that defendants' motion for summary judgment as to defendant Janam be denied on the grounds that whether defendant Janam used force in a good faith effort to maintain or restore discipline is a disputed material fact.

In the verified complaint, plaintiff also alleges that defendant Janam tried to break plaintiff's wrist, by bending plaintiff's hands upward. Defendants' summary judgment does not specifically address this claim. Accordingly, the undersigned does not address this claim in these findings and recommendations.[3]

*Defendant Lira*

Defendants interpret plaintiff's complaint to raise two separate Eighth Amendment claims against defendant Lira: 1) defendant Lira used excessive force when she applied the leg restraints; and 2) defendant Lira failed to protect plaintiff from the ankle injuries caused by the incorrectly applied leg restraints during plaintiff's escort to medical and while he was placed in the holding cell.

The undersigned finds that plaintiff's complaint raises one Eighth Amendment claim

---

are violated. See Whitley, supra, 475 U.S., at 327. This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. Such a result would have been as unacceptable to the drafters of the Eighth Amendment as it is today." Hudson, 503 U.S. at 9.

[3] At his deposition, plaintiff testified that defendant Janam tried to "break" plaintiff's wrists while handcuffing him. (Plaintiff's deposition at 48: 1-20.) Later, defense counsel confirmed, "So I want to make sure you are clear you are alleging that Officer Janam used force by taking you to the ground and twisting your arms to handcuff you?" (Id. at 57: 11-14.) Plaintiff confirmed that he was claiming that defendant Janam slammed him to the ground face first, put a knee in his back and tried to break plaintiff's wrists while plaintiff complied with all orders. (Id. at 57: 18-20.)

1 against defendant Lira based on her allegedly incorrect application of the leg restraints.
2 Plaintiff's allegations regarding the injuries he allegedly suffered as a result of the incorrectly
3 applied leg restraints are related to his claim that defendant Lira violated the Eighth Amendment
4 when she incorrectly applied the leg restraints.

5 Defendants argue that defendant Lira is entitled to summary judgment because it is
6 undisputed that, other than applying leg restraints, she did not use any force on August 17, 2018.
7 Defendants argue that to the extent defendant Lira applied the leg restraints incorrectly, she
8 cannot be liable for excessive force just for doing so. Defendants argue that negligent application
9 of the leg restraints does not violate the Eighth Amendment. Defendants also argue that it is
10 undisputed that defendant Lira did not cause the alleged post-incident injuries to plaintiff's ankles
11 because she did not escort plaintiff to medical after the incident. In support of these arguments,
12 defendants cite undisputed facts nos. 9-15.

13 In undisputed fact no. 9, defendants allege that defendant Lira, a responding officer,
14 entered the housing unit and applied leg restraints. (ECF No. 52-3 at 2; see also ECF No. 52-6 at
15 2 (Lira declaration).) In undisputed fact no. 10, defendants allege that other than applying leg
16 restraints, defendant Lira did not use any force. (ECF No. 52-3 at 2; see also ECF No. 52-6 at 2
17 (Lira declaration).) In undisputed fact no. 11, defendants allege that responding non-defendant
18 officers escorted plaintiff to medical. (ECF No. 52-3 at 2; see also ECF No. 52-6 at 2 (Lira
19 declaration).)

20 In undisputed fact no. 12, defendants allege that on September 13, 2018, plaintiff was
21 interviewed, on video camera, by a Sergeant in connection with plaintiff's allegations that
22 defendants assaulted him on August 17, 2018. (ECF No. 52-3 at 2.) In undisputed fact no. 13,
23 defendants allege that plaintiff had the opportunity during the interview to discuss and identify
24 the injuries he allegedly suffered as a result of the incident on August 17, 2018. (Id. at 3.) In
25 undisputed fact no. 14, defendants allege that during the interview, plaintiff described his injuries
26 as "abrasion[s] to the right ankle due to leg restraints being too tight on my leg." (Id.) In
27 undisputed fact no. 15, defendants allege that plaintiff reported no other injuries during the
28 incident on August 17, 2018. (Id.) In support of undisputed fact nos. 13-15, defendants cite the

10

DVD from the September 13, 2018 interview, separately lodged with the court.  (Id.)

As discussed above, in the verified complaint, plaintiff alleges that defendant Lira applied the leg restraints so tightly to plaintiff's right ankle, that plaintiff's flesh was caught.  (ECF No. 1 at 5.)  Plaintiff alleges that he screamed out in pain after the leg restraints were applied.  (Id.)  Plaintiff alleges that defendant Lira was one of the officers who escorted him to the holding cell.  (Id. at 6.)  Plaintiff alleges that after he was placed in the cage, he asked defendant Lira to remove the leg restraints because they were so tight.  (Id.)  Plaintiff alleges that at some point, he complained to defendant Lira of the excruciating pain.  (Id. at 9.)  Defendant Lira responded that she was teaching plaintiff a lesson.  (Id.)

Based on the allegations in plaintiff's verified complaint and defendants' undisputed facts, the undersigned finds that whether defendant Lira knew that she applied the leg restraints too tightly is a materially disputed fact.[4]  Whether defendant Lira escorted plaintiff away from the incident is a materially disputed fact.[5]  Whether defendant Lira told plaintiff that she was teaching him a lesson, after plaintiff told her of his pain, is a materially disputed fact.  Based on these materially disputed facts, the undersigned cannot determine whether defendant Lira applied force in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause plaintiff harm.  Accordingly, defendants' motion for summary judgment as to defendant Lira should be denied.

---

[4] In her declaration, defendant Lira does not address plaintiff's claim that right after she applied the leg restraints, he cried out in pain.  Based on this omission, plaintiff's claim that defendant Lira knew that the leg restraints were applied too tightly and caused him pain, and failed to either adjust or remove them, is arguably undisputed.

[5] Defendants contend that plaintiff testified at his deposition that defendant Lira did not escort him to medical.  In undisputed fact no. 11, defendants contend that responding non-defendant officers escorted plaintiff to medical, citing plaintiff's deposition transcript at 52: 23-25, 56: 8-25 and 57: 1-4.  (ECF No. 52-3 at 2.)  By medical, it appears that defendants are referencing the holding cage where plaintiff was first taken.

The undersigned has reviewed the sections of plaintiff's deposition cited by defendants in support of undisputed fact no. 11.  At these sections, plaintiff did not testify that defendant Lira did not escort him to medical.  For example, at p. 52: 23-25, plaintiff testified that defendant Janam did not escort him to the cage, but defendant Lira and some other officers did.  At page 56: 11-13, plaintiff testified that defendant Lira was the one who put the leg restraints on and escorted plaintiff to the Program Office.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 52) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 23, 2021

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Stev670.sj